2007 UT App 116

**STATE of Utah, Plaintiff and Appellee,**

v.

**Sabrina JIMENEZ aka Sabrina Saxton, Defendant and Appellant.**

No. 20050970–CA.

Court of Appeals of Utah.

April 5, 2007.

Gary L. Bell, South Jordan, for Appellant.

Mark L. Shurtleff, atty. gen., and Marian Decker, asst. atty. gen., Salt Lake City, for Appellee.

Before GREENWOOD, Associate P.J., McHUGH and THORNE, JJ.

## OPINION

THORNE, Judge:

¶1 Defendant Sabrina Jimenez appeals her jury trial convictions of one first degree felony count of sodomy on a child, *see* Utah Code Ann. § 76-5-403.1 (2003), and four first degree felony counts of aggravated sexual abuse of a child, *see id.* § 76-5-404.1 (2003). On appeal, Defendant challenges both the admission of witness testimony pertaining to the children's credibility and the court order imposing the sentence for count one to run consecutive to the sentence for count three. We affirm.

## BACKGROUND

¶2 Defendant is the natural mother of three boys: W.M., born June 1996; B.M., born September 1998; and G.S., born June 2001. On August 3, 2002, Defendant married G.S.'s father, Brandon Saxton. In November 2002, the Department of Child and Family Services (DCFS) intervened based on a report by Saxton's mother, Cheryl Gee (Grandmother), accusing the couple of neglect and drug use. On October 3, 2003, Grandmother was granted temporary custody of all three children based on the couple's noncompliance with their service plans and Defendant's positive drug test. In March 2004, the couple stipulated to give Grandmother permanent custody of all three children, and DCFS's involvement ended shortly thereafter.

¶3 In the fall of 2004, Grandmother enrolled W.M. in a scouting program. The program's manual instructed parents to engage in a discussion with the scouts about safety, strangers, and "good touch" and "bad touch." Grandmother spoke with W.M. and B.M. individually and asked them "if anybody had ever touched them somewhere that was private that they were uncomfortable with." Both W.M. and B.M. responded that they had been touched in such a manner, and identified Defendant as the individual who had touched them. Grandmother informed W.M. and B.M.'s therapist, Shane Adamson, of the allegations of abuse. In subsequent sessions with Adamson, both W.M. and B.M. again disclosed that Defendant had inappropriately touched them. After the children

disclosed these allegations to Grandmother and Adamson, Detective Hauer of the West Valley City Police Department interviewed both children individually at the Children's Justice Center. The children again confirmed Defendant's abuse. Based on this information, the State charged Defendant on February 2, 2005, with two counts of sodomy on a child and four counts of aggravated sexual abuse of a child.[1]

¶4 On April 22, 2005, Defendant filed a Motion for Order Allowing Independent Interview of Minor Children and Memorandum of Support (Motion). On May 3, 2005, the State filed a memorandum in opposition to Defendant's Motion. On May 25, 2005, a hearing on Defendant's Motion was held. The trial court granted Defendant's Motion but limited the interview to thirty minutes total for both children.

¶5 A jury trial was held on July 11 and 12, 2005. During the trial, the State called various witnesses, including Detective Hauer and Adamson. On direct examination, the State questioned Detective Hauer about his interview with Defendant. Detective Hauer stated that Defendant denied having inappropriately touched the boys. The State asked Detective Hauer if he had asked Defendant why the boys would make this up. Detective Hauer responded,

> Yeah, I did. These cases are really hard because of the fact that you're dealing with kids and adults and adults have ulterior motives and biases and things like that. However, in my experience, at least the kids can be somewhat more credible. So I asked her, you know, why would the kids make this up? I believe her response was that [Saxton] was the one who told them to say it.

The State also questioned Adamson and asked him if B.M. spoke freely about the abuse. Adamson responded,

Over the three different times that [B.M] talked about it there were times where he would just—was kind of guarded and lost focus, but then there were other times where he just was very believable and really stuck to his story, and so I believe that—I believe him.

¶6 Following the jury trial, Defendant was convicted of count one of sodomy on a child[2] and counts three through six of aggravated sexual abuse of a child. The trial court sentenced Defendant to a term of fifteen years to life on count one and five years to life on each of the four remaining counts of aggravated sexual abuse. The trial court ordered count one to be imposed consecutively to count three, with counts four through six to be served concurrently with each other and with counts one and three. Defendant appeals.

## ISSUES AND STANDARDS OF REVIEW

¶7 Defendant asserts that the trial court committed plain error when it permitted Detective Hauer and Adamson to testify as to the children's credibility. We review a trial court's decision to admit or preclude evidence under an abuse of discretion standard. *See State v. Adams*, 2000 UT 42, ¶9, 5 P.3d 642.

▮▮▮ ¶8 Defendant also asserts that the trial court erred in imposing the sentence on count one to run consecutively to the sentence on count three. "We afford the trial court wide latitude in sentencing...." *State v. Bluff*, 2002 UT 66, ¶66, 52 P.3d 1210. "Generally, we review sentencing decisions to determine whether the court exceeded its permitted range of discretion, and we will reverse only if we determine that the trial court has failed to consider all legally relevant factors, or imposed a sentence that exceeds legally prescribed limits." *State v. Malaga*, 2006 UT App 103, ¶12, 132 P.3d 703 (quotations and citations omitted).[3]

1. Defendant was not charged with any sexual misconduct involving G.S.

2. Defendant was acquitted of count two of sodomy on a child.

3. Defendant also argues that the trial court violated her due process rights by allowing the State unlimited access to the children and limiting her

expert's interview of the children to a total of thirty minutes. However, Defendant did not object to the time limitation below and raises this claim for the first time on appeal. Additionally, Defendant does not argue that plain error or exceptional circumstances exist. " '[W]e will review issues raised for the first time on appeal only if exceptional circumstances or "plain er-

## ANALYSIS

### I. Admissibility of Evidence

¶ 9 Defendant asserts that the trial court committed plain error when it allowed two witnesses to testify as to the children's credibility in violation of *State v. Rimmasch*, 775 P.2d 388 (Utah 1989), and rule 608(a)(1) of the Utah Rules of Evidence. *See Rimmasch*, 775 P.2d at 392 (holding that "rule 608(a)(1) bars admission of an expert's testimony as to the truthfulness of a witness on a particular occasion"); *see also* Utah R. Evid. 608(a)(1) ("The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but ... the evidence may refer only to character for truthfulness or untruthfulness...."). In both instances, the State's questions did not directly elicit the credibility testimony. Detective Hauer's statement regarding the truthfulness of children in general was made together with his response to the State's inquiry about whether he had asked Defendant why the boys would make up their stories. Likewise, Adamson's testimony about B.M.'s credibility was made after responding to the State's question about whether B.M. spoke freely about the abuse. Trial counsel chose not to object to the credibility testimony, but Defendant argues that the trial court should have recognized that said testimony was inadmissible and therefore should have sua sponte stricken Detective Hauer's and Adamson's comments on the children's credibility and believability.

¶ 10 "Generally, we will review objections raised for the first time on appeal for plain error." *State v. Brown*, 948 P.2d 337, 343 (Utah 1997). "[T]o establish the existence of plain error and to obtain appellate relief from an alleged error that was not properly objected to, the appellant must

show the following: (i)[a]n error exists; (ii) the error should have been obvious to the trial court; and (iii) the error is harmful...." *State v. Dunn*, 850 P.2d 1201, 1208 (Utah 1993). "However, we do not appraise all rulings objected to for the first time on appeal under the plain error doctrine. For example, if trial counsel's actions amounted to an active, as opposed to a passive, waiver of an objection, we may decline to consider the claim of plain error."[4] *State v. Bullock*, 791 P.2d 155, 158 (Utah 1989).

> [B]efore addressing defendant's claim of plain error, it is necessary to address the threshold issues: Was the failure to raise the objections before the trial court the result of a consciously chosen strategy of trial counsel rather than an oversight, and if it was a strategic decision, did the making of that choice constitute ineffective assistance of counsel? If the decision was conscious and did not amount to ineffective assistance of counsel, this [c]ourt should refuse to consider the merits of the trial court's ruling.

*Id.* at 158–59.

¶ 11 The State contends that Defendant's failure to object to the testimony of Detective Hauer and Adamson was the result of a conscious trial strategy. Indeed, at oral argument before this court, appellate counsel who was also trial counsel conceded that an objection was not made because counsel did not want to draw further attention to the credibility testimony. Thus, we conclude that trial counsel's failure to object was the result of a conscious trial strategy.

¶ 12 Defendant also conceded at oral argument, and we agree, that trial counsel's decision was reasonable. The witnesses' credibility comments consisted of two isolated statements, not specifically elicited by the

ror" exists.'" *Timm v. Dewsnup*, 2003 UT 47, ¶ 39, 86 P.3d 699 (quoting *Salt Lake City v. Ohms*, 881 P.2d 844, 847 (Utah 1994)). Therefore, we do not address this issue.

4. In *State v. Bullock*, 791 P.2d 155 (Utah 1989), the Utah Supreme Court explained the necessity for such an approach.

> If trial counsel were permitted to forego objecting to evidence as part of a trial strategy that counsel thinks will enhance the defen-

dant's chances of acquittal and then, if that strategy fails, were permitted to claim on appeal that the [c]ourt should reverse because it was plain error for the court to admit the evidence, we would be sanctioning a procedure that fosters invited error. Defendants are thus not entitled to both the benefit of not objecting at trial and the benefit of objecting on appeal.

*Id.* at 159 (footnote omitted).

State's questions, and not thereafter emphasized, argued, relied upon or reiterated by either party at trial. Therefore, we conclude that trial counsel's decision not to generate attention toward the credibility testimony by objecting was reasonable. Because trial counsel's decision not to object "was reasonable in light of his trial strategy, we do not address [D]efendant's plain-error arguments regarding [the credibility testimony]." *State v. Hall*, 946 P.2d 712, 717 (Utah Ct.App.1997) (quotations and citation omitted); *see also Brown*, 948 P.2d at 343 n. 5 ("This court will not review for error a trial attorney's strategic decisions unless the error falls below the standard of reasonable professional practice.").[5]

## II. Consecutive Sentencing

 ¶ 13 Defendant next argues that the trial court abused its discretion by deciding the concurrent/consecutive sentencing issue without taking into account all legally relevant factors. *See State v. Valdovinos*, 2003 UT App 432, ¶ 28, 82 P.3d 1167 ("A trial court abuses its discretion in sentencing when it 'fails to consider all legally relevant factors' ...." (quoting *State v. McCovey*, 803 P.2d 1234, 1235 (Utah 1990))). "In determining whether state offenses are to run concurrently or consecutively, the court shall consider the gravity and circumstances of the offenses, the number of victims, and the history, character, and rehabilitative needs of the defendant." Utah Code Ann. § 76–3–401(2) (2003). "'[T]he burden is on [the defendant] to show that the trial court did not properly consider all the factors.'" *Valdovinos*, 2003 UT App 432 at ¶ 28, 82 P.3d 1167 (second alteration in original) (quoting *State v. Helms*, 2002 UT 12, ¶ 16, 40 P.3d 626).

¶ 14 Defendant asserts that the trial court failed to explicitly address each of the factors outlined in Utah Code section 76–3–401(2)

and that the trial court's enumeration of only those factors concerning the severity of the offenses provided an insufficient basis to justify imposing any consecutive sentences. In support of this argument, Defendant relies on *State v. Perez*, 2002 UT App 211, 52 P.3d 451. However, the circumstances in *Perez* vary greatly from the instant case. In *Perez*, Adult Probation and Parole recommended concurrent sentences, and both the state and defense counsel requested that the recommendation be followed. *See id.* at ¶ 44. The trial court, however, proceeded to impose the sentences consecutively without addressing the basis for such a departure and only briefly commented on the gravity and circumstances of the offenses. *See id.* at ¶¶ 45, 48. This court found that the trial court erred because the record was devoid of any indication that the trial court considered the statutorily prescribed factors. *See id.* at ¶ 48.

¶ 15 Here, unlike in *Perez*, Adult Probation and Parole recommended consecutive sentences for count one and count three. Trial counsel, who had not objected to the presentence report and had asserted that there were no errors in the report, requested that the trial court impose concurrent sentences. The trial court chose to follow Adult Probation and Parole's recommendation. In contrast to *Perez*, the presentence report supported the trial court's decision, and the transcript of the sentencing hearing indicates that prior to sentencing the judge had reviewed and considered the information in the presentence report.[6] Therefore, regardless of whether the factors enunciated at the sentencing hearing may have pertained exclusively to the gravity and circumstances of the offense, the record demonstrates that the trial court considered all of the statutorily prescribed factors. *See, e.g., State v. Thorkelson*, 2004 UT App 9, ¶ 13, 84 P.3d 854 (holding that although the trial court did not specifically refer to the factors in Utah Code section 76–3–401(2), the trial court complied

---

**5.** Moreover, even if the testimony was inadmissible, which we need not decide, it is not necessarily error for a judge to not sua sponte respond to the credibility testimony. *See State v. Brown*, 948 P.2d 337, 343 (Utah 1997) ("If trial counsel intentionally fails to object, the trial judge is put in the untenable position of deciding whether to intervene and potentially interfere with trial

counsel's strategy or face review for plain error.").

**6.** The presentence report explicitly addressed the facts of the offenses, the number of victims, and the history, character, and rehabilitative needs of Defendant to support the recommendation.

with the statute by relying on presentence reports that included the pertinent information). We conclude that the trial court did not abuse its discretion by specifically referring only to a portion of the factors presented for consideration.

¶ 16 Defendant also asserts that the trial court failed to consider and give adequate weight to certain mitigating factors that demonstrate Defendant's ability to rehabilitate. Defendant relies on *State v. Galli*, 967 P.2d 930 (Utah 1998), in which the supreme court held that the involved trial courts improperly imposed consecutive sentences because the record suggested that the trial courts may have given inadequate weight to some of the mitigating circumstances and that consecutive sentences were not in accord with the defendant's rehabilitative needs. *See id.* at 938. In this case, Defendant maintains that the trial court overlooked mitigating factors similar to those in *Galli*, i.e., Defendant had only minor non-violent offenses and at the time of trial Defendant had expressed a commitment to improving herself by completing a drug rehabilitation program and completing eighteen weeks of a domestic violence program. However, unlike in *Galli*, Defendant did not take responsibility for her actions and the evaluative assessment in the presentence report found that Defendant was not considered "amenable to treatment."

 ¶ 17 Additionally, the record indicates that the trial court considered the mitigating circumstances,[7] but ultimately found that the aggravating factors [8] "far outweigh the mitigating—sole mitigating factor [of Defendant's lack of a criminal record]." Moreover, "the fact that [Defendant] views [the] situation differently than did the trial court does not prove that the trial court neglected to consider the [statutory] factors." *Helms*, 2002 UT 12 at ¶ 14, 40 P.3d 626. Nothing in

Utah Code section 76–3–401(2) requires the trial court to give each of the factors equal weight. Likewise, the Utah Supreme Court has noted, albeit in the context of minimum/maximum sentences, that "[o]ne factor in mitigation or aggravation may weigh more than several factors on the opposite scale." *State v. Russell*, 791 P.2d 188, 192 (Utah 1990). Based on the foregoing, we conclude that the trial court did not exceed its discretion when it imposed consecutive sentences.

## CONCLUSION

¶ 18 In sum, Defendant's failure to object to the witnesses' testimony on the children's credibility was a conscious strategic decision. Because trial counsel's conscious strategic decision not to object "was reasonable in light of his trial strategy, we do not address [D]efendant's plain-error arguments regarding [the credibility testimony]." *State v. Hall*, 946 P.2d 712, 717 (Utah Ct.App.1997) (quotations and citation omitted); *see also State v. Bullock*, 791 P.2d 155, 158 (Utah 1989) ("[W]e do not appraise all rulings objected to for the first time on appeal under the plain error doctrine.").

¶ 19 As to Defendant's consecutive sentencing issue, the record demonstrates that the trial court considered all of the statutorily prescribed factors. Therefore, we conclude that the trial court did not abuse its discretion when it imposed count one consecutive to count three. Accordingly, we affirm the trial court's order imposing the consecutive sentences.

¶ 20 WE CONCUR: PAMELA T. GREENWOOD, Associate Presiding Judge, CAROLYN B. McHUGH, Judge.

---

7. At sentencing, the trial court specifically referenced Defendant's lack of criminal history as a mitigating factor. Likewise, the presentence report cited as mitigating factors Defendant's limited criminal history as well as the role domestic violence and drug abuse played in contributing to Defendant's victimization of the children.

8. At sentencing, the trial court also referenced the aggravating factors it considered in determining the appropriate sentence, which included, in part, the heinous and disturbing nature of the crimes, the age and number of victims, Defendant's position of special trust as the children's mother, Defendant's continued denial of the abuse, and the frequency and duration of the abuse.