2013 UT App 277

**STATE of Utah, Plaintiff and Appellee,**

v.

**Justin CUNNINGHAM, Defendant and Appellant.**

No. 20120475–CA.

Court of Appeals of Utah.

Nov. 21, 2013.

Colleen K. Coebergh, for Appellant.

John E. Swallow and Michelle I. Young, for Appellee.

Judge CAROLYN B. McHUGH authored this Opinion, in which Judge MICHELE M. CHRISTIANSEN and Senior Judge RUSSELL W. BENCH concurred.[1]

McHUGH, Judge:

¶1 Justin Cunningham appeals from his conviction for distribution of a controlled substance within 1,000 feet of a church and recreation center, a first degree felony, *see* Utah Code Ann. § 58–37–8(1)(a)(ii), (4)(a), (4)(b)(i) (LexisNexis 2012).[2] In particular, he argues that trial counsel performed ineffectively and that the trial court plainly erred because trial counsel did not withdraw as counsel to provide testimony on behalf of the defense. We conclude that trial counsel did not perform deficiently and that there was no obvious error that should have been corrected by the trial court. As a result, we affirm.

## BACKGROUND [3]

¶2 On April 1, 2011, a confidential informant (Informant) working for local law enforcement arranged to meet Mr. Cunningham, with whom she was already acquainted, to purchase methamphetamine in Uintah County, Utah. Although police officers typically have an informant wear a transmitting wire so the officers can ensure the safety of the informant during drug transactions, there was a risk that Mr. Cunningham would

check Informant for such a device before the drug deal. Consequently, Officer Bevan Watkins decided to monitor the transaction by having Informant carry a cellular telephone with an open line to his telephone. In accordance with that plan, Informant called Officer Watkins's cellular telephone and then placed her cellular telephone in her pocket while still connected. Officer Watkins then activated the speaker on his telephone so that he and Officer Michael Gledhill, another officer involved in the operation, could hear the deal through the open line.[4] Officer Watkins also tried to record what was transmitted over the open telephone line but explained at trial, "I'm not very good at the smartphone and so it didn't—I couldn't pull it back up. But my main concern was that I could hear [Informant]."

¶3 Although Officers Watkins and Gledhill listened to the transaction over the open telephone line, they did not arrest Mr. Cunningham at that time in order to preserve Informant's effectiveness as an informant. Mr. Cunningham was arrested several months later at a different location and charged with one count of distribution of a controlled substance, enhanced to a first degree felony because the offense occurred within 1,000 feet of a church and a recreation center.

¶4 At a jury trial held on April 2, 2012, Officer Watkins related in detail what he heard during the transaction. He explained that Informant proceeded to Mr. Cunningham's location and that Officer Watkins was able to hear a "short conversation" over the telephone during their exchange that was "something about come back later." Informant then left Mr. Cunningham and returned to the officers. They waited about forty minutes before Informant returned to Mr. Cunningham's location. With respect to

---

1. The Honorable Russell W. Bench, Senior Judge, sat by special assignment as authorized by law. *See generally* Utah Code Jud. Admin. R. 11–201(6).

2. Because there have been no substantive changes to the relevant sections of the Utah Code, we cite the current version for the convenience of the reader.

3. "On appeal, we review the record facts in a light most favorable to the jury's verdict and recite the facts accordingly." *State v. Holgate*, 2000 UT 74, ¶2, 10 P.3d 346 (citation and internal quotation marks omitted).

4. The microphone on Officer Watkins's cellular telephone was muted so that nothing could be heard by Mr. Cunningham.

this second exchange between Informant and Mr. Cunningham, Officer Watkins testified as follows:

Q. Let me just ask you then the second time, let's get more details about that. Were you able to hear anything on the phone during the second time that there was an attempt to make contact with [Mr.] Cunningham?

A. I could hear a male subject that mentioned he'd have to go get the meth. I don't remember the exact wording. It was somewhat hard to hear because the phone was in [Informant's] pocket. We didn't want it obvious. Of course, it was easier to hear [Informant] because the phone was on her.

¶ 5 Officer Watkins continued his testimony, stating that Informant gave Mr. Cunningham $120 and Mr. Cunningham then left to retrieve the methamphetamine from a different location while Informant waited. Officer Watkins reported that when Mr. Cunningham returned, he gave the methamphetamine to Informant. The direct examination of Officer Watkins included the following exchange:

Q. Were you able to hear any of that conversation?

A. It was muffled, I couldn't tell you verbatim what it was, just that there was something mentioned about possibly smoking meth, but I don't know the details. Like I say, it was kind of difficult to hear. Something about she gave an excuse that she had to leave. Don't know the details of that. But I could just hear bits and pieces. Once again, this was kind of a last minute setup. It was basically a safety issue, make sure that [Informant] was safe.

¶ 6 The prosecutor then asked Officer Watkins whether he was "able to identify the sound or the voice," and trial counsel objected. After a discussion off the record, the prosecutor provided foundation for his prior question to Officer Watkins:

Q. Without going into any detail, have you had any occasion to hear Mr. Cunningham's voice prior to April 1st of 2011?

. . . .

A. No, I did not.

Q. So the voice that you heard, were you able to identify who it was?

A. Later I was.

Q. Okay. Let me ask you then, after this occurred, have you had any chance to listen to [Mr.] Cunningham's voice?

A. I have.

Q. But at the time you hadn't heard his voice?

A. That is correct.

Q. Having heard his voice after April 1st of 2011, were you able to make any conclusions as to who you believed you heard on the telephone, the male subject on the telephone on April 1st, 2011?

A. It was my belief that it was Mr. Cunningham. There was a comparison. I couldn't tell you for 100—you know, I just, once again, it was kind of hard to hear him. But listening to—afterwards there was a comparison, yes.

¶ 7 During cross-examination, trial counsel established that Officer Watkins never saw Mr. Cunningham during the transaction and that he relied on Informant's report that she met with Mr. Cunningham. Trial counsel then questioned Officer Watkins about his attempts to record the incident.

Q. And you said that you tried to record something; is that correct?

A. As far as a phone conversation I did, yes.

Q. Yeah, with a telephone, correct?

A. That is correct.

Q. Now, I met with you about a month ago, do you remember?

A. Yes.

Q. In your office, do you remember?

A. Yes, I do.

Q. And we tried to listen to that tape recording, correct?

A. Yes, I couldn't open the phone one up, yes.

Q. And we couldn't—there wasn't anything on there, was there?

A. I couldn't even get it to open in my computer. Once again, that was the first time I ever tried that.

Q. So we—the technology that you had didn't have anybody's voice on it the day that I sat with you, did it?

A. I was unable to open that recording.

¶ 8 Following Officer Watkins's cross-examination and outside of the presence of the jury, Mr. Cunningham's trial counsel moved to dismiss the case, alleging that the State had failed to disclose exculpatory evidence because it had never provided the recording of the drug transaction to the defense. Trial counsel explained that the court had ordered the State to turn over a copy of the recording of the transaction but that the State had asked the court to modify that order so that trial counsel would only be allowed to listen to the recording. Trial counsel reported, "[M]y recollection of what happened is that [the] tape was played and you couldn't hear anything on it whatsoever." He then argued that now that "[Officer] Watkins has testified that he could hear something and that the voice was similar to my client's, I believe that I'm entitled to now play that to the jury to show them that nobody—to impeach his testimony."

¶ 9 In response, the prosecutor explained that Officer Watkins was not testifying as to the content of the recording but from his own memory of the conversation that he had heard through the cellular telephone. The prosecutor confirmed that the recording made by Officer Watkins could not be retrieved and, therefore, the State had not withheld any evidence from Mr. Cunningham. The trial court agreed with the prosecutor, stating, "The evidence is clear that there was never a recording provided because it wasn't available." The trial court also noted, "[Officer Watkins's] credibility won't be impeached ... because the basis of [his testimony] is not the recording. The basis of it is his recollection of the conversation." Accordingly, the trial court denied the motion and instructed trial counsel that he could "cross-examine [Officer Watkins] all

[he] want[s] on" what happened when Officer Watkins tried to play the recording for trial counsel.

¶ 10 Trial counsel urged the trial court to reconsider its ruling, reiterating that Officer Watkins was able to open the audio file, but that they "sat there for 20 minutes to 30 minutes and heard nothing." He argued that if he had the disk, he could play it for the jurors and say, "[N]o, that's not right, here's what it sounded like." The trial court then interjected, "But Mr. Watkins didn't testify that his memory was based on the recording. His testimony is based on his recollection." At that point, trial counsel interrupted, stating, "I understand that." But he asserted that with the recording, he could impeach Officer Watkins's recollection and credibility by showing that nothing was on the recording. The trial court refused to reconsider its decision to deny the motion to dismiss, again explaining that Officer Watkins's credibility would not be impeached by playing the recording on which no voices could be heard because the basis of his testimony was not the recording but his recollection of the conversation.

¶ 11 Next, Informant testified. She admitted that she has used illegal drugs, including methamphetamine and pills, that she has been arrested for theft, and that she first became a police informant to "work off a theft charge." She took a job as an informant with the Uintah Basin Narcotic Strike Force and earned $80 per deal. Informant then explained that she knew Mr. Cunningham before the April 1, 2011 deal as her stepsister's methamphetamine dealer. Informant proceeded to describe the transaction and visually identify Mr. Cunningham as the individual who had sold her the drugs.

¶ 12 Officer Gledhill also testified and indicated that he was with Officer Watkins when they listened to the drug transaction over Officer Watkins's telephone. Officer Gledhill reported that Officer Watkins "also had a digital recorder and that's how we were recording the transaction so we could listen to what was going on at the residence." [5] Offi-

---

5. We are unable to determine from the record whether there were two attempts to record the

transaction, namely one by the application on

cer Gledhill was unaware whether the attempt to record the conversation had been successful.

¶ 13 After the State rested, the defense called a witness (Resident), who testified that he lived at the address where the drug transaction with Informant took place on the date of the transaction and that Mr. Cunningham did not live there. On cross-examination, Resident denied selling the methamphetamine to Informant and stated that he did not know if someone else at the house had sold it to her. He admitted that he had been convicted of possession of controlled substances, including methamphetamine, and of obstructing the police. Resident also conceded that he and Mr. Cunningham are friends.

¶ 14 The defense next called a woman who testified that Mr. Cunningham was living with her and her family at the time of the drug transaction. She was certain of the date because she returned from a trip to visit her sick mother on April 1, 2011. The woman testified that Mr. Cunningham was in the basement with her son when she came in from the airport. However, she admitted on cross-examination that she went to bed at 7 p.m. and had "no idea what [Mr. Cunningham] did after that." The woman's son also testified for the defense. He corroborated his mother's testimony that Mr. Cunningham lived with their family on April 1, 2011, and that Mr. Cunningham was home on that day. According to the son, he and Mr. Cunningham were together at the family's house on April 1, 2011, until after midnight. A neighbor of the woman also testified that Mr. Cunningham lived with the family for a period of time; however, the neighbor did not have "any idea on [the] time period."

¶ 15 The jury convicted Mr. Cunningham of distributing a controlled substance within 1,000 feet of a church and a recreation center. Mr. Cunningham was subsequently sentenced to five years to life in the Utah State Prison. Mr. Cunningham appeals.

## ISSUES AND STANDARDS OF REVIEW

■ ¶ 16 Mr. Cunningham argues that his trial counsel provided ineffective assistance

when he failed to obtain exculpatory material in the form of trial counsel's own testimony regarding Officer Watkins's recording of the drug deal. "An ineffective assistance of counsel claim raised for the first time on appeal presents a question of law." *State v. Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162.

■ ¶ 17 Mr. Cunningham also claims that the trial court plainly erred by not sua sponte declaring a mistrial and replacing trial counsel so that counsel could testify regarding the failed recording. "To prevail under plain error review, a defendant must demonstrate three elements. First, he must establish that an error did in fact occur. Second, he must establish that the error should have been obvious to the trial court. Third, the defendant must establish that the error was harmful...." *State v. King*, 2006 UT 3, ¶ 21, 131 P.3d 202 (citation and internal quotation marks omitted).

## ANALYSIS

¶ 18 Mr. Cunningham contends that his trial counsel provided ineffective assistance that affected the outcome of his case. To prevail on an ineffective assistance of counsel claim, a defendant must show both "(1) that counsel's performance was objectively deficient, and (2) [that] a reasonable probability exists that but for the deficient conduct defendant would have obtained a more favorable outcome at trial." *Clark*, 2004 UT 25, ¶ 6, 89 P.3d 162. In order to establish deficient performance, "a defendant 'must show that counsel's representation fell below an objective standard of reasonableness.'" *State v. Tennyson*, 850 P.2d 461, 465 (Utah Ct.App. 1993) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). "A defendant must ... overcome the strong presumptions that counsel's performance fell 'within the wide range of reasonable professional assistance' and that 'under the circumstances, the challenged action might be considered sound trial strategy.'" *Id.* (quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052). Even if Mr. Cunningham can establish that "no conceivable legitimate tac-

Officer Watkins's smartphone and one by a separate digital recorder.

tic or strategy can be surmised from counsel's actions," *see id.* at 468, 104 S.Ct. 2052, he is not entitled to a new trial unless, in the absence of trial counsel's deficient performance, there is a reasonable probability that he could have obtained a more favorable outcome at trial, *see Clark,* 2004 UT 25, ¶ 6, 89 P.3d 162. If Mr. Cunningham fails to establish either prong of the foregoing test, his ineffective assistance claim fails. *See Tennyson,* 850 P.2d at 466.

¶ 19 Mr. Cunningham argues that his trial counsel provided deficient assistance by failing to withdraw as counsel and testify that nothing could be heard when Officer Watkins played the recording. Specifically, Mr. Cunningham contends, "[O]nly one witness was in a position to refute [Officer Watkins's] testimony that [Mr. Cunningham's] voice could be heard on the recording of the buy. That witness was trial counsel himself...." Mr. Cunningham further claims that because of his trial counsel's failure, his "defense was impaired to the degree that a different result likely would have [been] obtained had counsel testified." In response, the State contends that Mr. Cunningham's "arguments are grounded in a single mistake of fact: that Officer Watkins testified 'that [Mr. Cunningham's] voice could be heard on the recording of the buy.'" We agree with the State that Mr. Cunningham has misapprehended Officer Watkins's trial testimony.

¶ 20 Officer Watkins never testified that he had heard Mr. Cunningham's voice on the recording. To the contrary, Officer Watkins repeatedly testified that he was unable to retrieve or play the recording. He indicated that he was able to hear the conversation between Informant and Mr. Cunningham through the open telephone line during the transaction, and his trial testimony was based on what he had heard at that time. During the argument on the motion to dismiss, trial counsel indicated that he understood that Officer Watkins's description of the conversations between Mr. Cunningham and Informant was based on his memory of what he heard over the telephone on April 1, 2011.

¶ 21 On appeal, Mr. Cunningham argues that trial counsel's testimony about the recording being played and no voices being audible was critical to challenge Officer Watkins's testimony "to the effect that [Mr.] Cunningham's voice could be heard" on the recording. According to Mr. Cunningham, impeachment of Officer Watkins was "vital to the defense because [Officer Watkins] was the only person aside from [Informant], who admittedly had credibility problems, who could place Mr. Cunningham at the scene of the crime." However, Mr. Cunningham's argument presupposes that Officer Watkins's testimony about hearing an unidentified male voice referred to a recording of the drug transaction rather than the live feed of the actual transaction. We are not convinced that this is a fair reading of Officer Watkins's testimony.

¶ 22 The record reflects that Officer Watkins admitted that during the transaction, he was unable to identify the male voice he heard. He then explained that after the drug transaction he had an opportunity to listen to Mr. Cunningham's voice. He elaborated, "There was a comparison. I couldn't tell you for 100—you know, I just, once again, it was kind of hard to hear him. But listening to—afterwards there was a comparison, yes." Based on that subsequent comparison of Mr. Cunningham's voice to the male voice he had heard during the transaction, Officer Watkins testified that "it was [his] belief that it was Mr. Cunningham" he heard on April 1, 2011, selling methamphetamine to Informant.

¶ 23 While the testimony is not as clear as it could have been, it does not state that Officer Watkins identified Mr. Cunningham's voice by listening to the recording. A more reasonable interpretation of the testimony is that Officer Watkins had an opportunity to hear Mr. Cunningham speak after he was arrested and compared the voice he heard directly from Mr. Cunningham with the unidentified male voice he had heard over the telephone during the April 1, 2011 transaction.

¶ 24 The only evidence that trial counsel could have provided was that Officer Watkins played the recording, but no voices could be heard. Thus, trial counsel may have challenged Officer Watkins's statements that the

recording could not be opened and played. However, trial counsel's testimony would not have proved that Officers Watkins and Gledhill were unable to hear the transaction over the speaker phone while it transpired. Likewise, it would have had little impeachment value in terms of Officer Watkins's identification of Mr. Cunningham as the male voice he heard on April 1, 2011, because Officer Watkins did not assert that he used the recording for that purpose and any inference from his testimony to that effect is weak.

¶ 25 Under these circumstances, trial counsel did not perform deficiently. Rule 3.7 of the Utah Rules of Professional Conduct states, "A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness. . . ." Given the minimal impeachment value that trial counsel's testimony would have provided, trial counsel would not have been a necessary witness. Furthermore, withdrawal may not have been permissible under the facts of this case. *See* Utah R. Prof'l Conduct 1.16(b) ("[A] lawyer may withdraw from representing a client if . . . withdrawal can be accomplished without material adverse effect on the interests of the client. . . ."); *id.* R. 3.7 (forbidding counsel who is a necessary witness from withdrawing when "disqualification of the lawyer would work substantial hardship on the client"). Thus, any motion to withdraw may well have been futile. And trial counsel's decision not to withdraw midtrial to testify was sound strategy given that trial counsel's testimony would not have effectively contradicted Officer Watkins's testimony. *Cf. Fernandez v. Cook*, 870 P.2d 870, 876 (Utah 1993) ("[I]ncluded as a strategic decision is counsel's decision to call or not to call a certain witness."); *see also Adams v. State*, 2005 UT 62, ¶ 25, 123 P.3d 400 ("[T]actical decisions such as 'what witnesses to call, what objections to make, and, by and large, what defenses to interpose, are generally left to the professional judgment of counsel.'" (quoting *State v. Wood*, 648 P.2d 71, 91 (Utah 1982))). Accordingly, trial counsel's representation did not fall "below an objective standard of reasonable professional judgment," *see State v. Litherland*, 2000 UT 76, ¶ 19, 12 P.3d 92, and he was therefore not ineffective for failing to withdraw and testify

as a witness, *see generally State v. Tennyson*, 850 P.2d 461, 466 (Utah Ct.App.1993) (noting that failure on either prong of the *Strickland* analysis will defeat a defendant's claim).

¶ 26 Mr. Cunningham also argues that the trial court plainly erred by not sua sponte declaring a mistrial and removing trial counsel. Because trial counsel's decision not to withdraw midtrial was sound strategy, Mr. Cunningham cannot establish any obvious error that the trial court should have corrected. *Cf. State v. Litherland*, 2000 UT 76, ¶ 31, 12 P.3d 92 ("Under the[ ] circumstances [of the case], we cannot say the trial court abused its discretion by respecting trial counsel's choices. In other contexts, we have refused to give defendants the benefit of traditional plain error analysis where doing so would create an incentive for invited error."); *State v. Jimenez*, 2007 UT App 116, ¶ 12, 158 P.3d 1128 ("Because trial counsel's decision not to object 'was reasonable in light of his trial strategy, we do not address [D]efendant's plain-error arguments. . . .'" (alteration in original) (quoting *State v. Hall*, 946 P.2d 712, 717 (Utah Ct.App.1997))).

## CONCLUSION

¶ 27 Trial counsel did not perform deficiently in failing to withdraw as counsel and instead testify as a witness for the defense. Consequently, the trial court did not plainly err in failing to override trial counsel's reasonable professional choice.

¶ 28 Affirmed.