2011 UT App 229

**STATE of Utah, Plaintiff and Appellee,**

v.

**David E. EPLING, Defendant and Appellant.**

**No. 20080668–CA.**

Court of Appeals of Utah.

July 21, 2011.

Elizabeth Hunt, Salt Lake City, for Appellant.

Mark L. Shurtleff and Erin Riley, Salt Lake City, for Appellee.

Before Judges DAVIS, McHUGH, and ORME.

## OPINION

McHUGH, Associate Presiding Judge:

¶ 1 David E. Epling appeals the trial court's order sentencing him to three consecutive terms of one to fifteen years in prison after he pleaded no contest to three counts of sexual abuse of a child, *see* Utah Code Ann. § 76–5–404.1 (2008). He argues that the trial court exceeded its discretion by not considering all legally relevant factors, by relying on impermissible evidence, and by not according mitigating evidence appropriate weight before imposing consecutive sentences. We affirm.

## BACKGROUND

¶ 2 Epling was charged by information with two counts of sodomy upon a child, *see id.* § 76–5–403.1, and four counts of aggravated sexual abuse of a child, *see id.* § 76–5–

404.1, after Epling's stepson (Stepson) revealed during an interview at the Provo Children's Justice Center (CJC) that Epling had abused him several times over a two-year period. Epling eventually pleaded no contest to three second degree felony counts of sexual abuse of a child.

¶ 3 At the sentencing hearing, the trial court listened to arguments from Epling's defense counsel and the State, heard testimony from Stepson's uncle (Uncle), and heard testimony from Epling's former employer. Defense counsel did not object to the information contained in the presentence investigation report (PSI) or the psychosexual evaluation report. Instead, defense counsel argued for leniency, noting that despite the no contest pleas, Epling continued to maintain his innocence, and that Epling had "passed" the "psycho-sexual evaluation and another exam." Defense counsel also stressed that Epling had no significant criminal history.

¶ 4 Uncle spoke at the sentencing hearing on behalf of Stepson, asking that Epling be given the maximum allowable sentence because of the serious impact the crimes had and would continue to have on Stepson's life. Uncle testified that although Stepson was receiving counseling, the abuse had left him afraid of men and resistant to involvement in social activities. Uncle's observations were based on his extensive interaction with Stepson during the approximately three years he had served as Stepson's permanent guardian.

¶ 5 In addition, the prosecutor advised the court that in his nearly two years of experience, he had only seen one other child sexual assault victim who was more traumatized than Stepson. The prosecutor explained that Stepson hid the first few times that they met and that it took nearly two years for Stepson to talk to him about the charges. He also noted that Epling had previously failed to comply with reunification and counseling services provided by the Department of Child and Family Services (DCFS) and that Stepson and his two brothers had been removed from Epling and the children's mother.[1] The

---

1. There is evidence in the record suggesting that Epling and the children's mother had previously been involved with DCFS because of domestic violence and/or drug issues and that Epling ad-

prosecutor further indicated that Epling had "made little or no effort to comply" with the doctor conducting the psychosexual evaluation and that Epling was late or did not appear for appointments. He also reminded the trial court that the evaluation showed that Epling had a "lack of sensitivity towards the situation, an inability ... to have empathy at all for his victims, that he struggles with impulsivity," and that "he has manipulation problems." Finally, the prosecutor focused the court's attention on the fact that during the pendency of the proceedings when he "would be expected to be on his best behavior," Epling had been arrested and convicted for providing alcohol to a minor.

¶ 6 In addition, Epling's former employer testified on his behalf. The employer admitted that Epling was a "drunk" and had problems with lack of emotion, but indicated that Epling was committed to his children and that the employer would trust Epling in the employer's home with his five children. The employer also stated that he thought Stepson's fear of men might be due to the various men Stepson's mother had allowed into the home. He reminded the court that Epling had passed a polygraph test and opined that the charges were without merit.

¶ 7 In imposing the sentence, the trial court first rejected Epling's claims of innocence, explaining that at sentencing, guilt is already established. The trial court indicated that "beyond this horrendous crime" described by Stepson, the court was concerned with several things: Epling's involvement with pornography; his refusal to take responsibility for his actions, which would make him not amenable to treatment; his failure to cooperate; and his severe alcohol problem. Based on all the available information, the trial court concluded that Epling was "out of control." The trial court then mentioned that it "was not impressed by polygraphs" because they are "meaningless," which is why "they're not admissible in Court." In fact, the trial court stated that it did not

"even know" if Epling had taken one. Noting that the charges involved three separate instances of sexual abuse, the trial court imposed three consecutive sentences of one to fifteen years in prison. In its oral sentencing order, however, the court did not explicitly indicate that it had read or was relying on either the PSI or the psychosexual report.

## ISSUES AND STANDARD OF REVIEW

■■■ ¶ 8 Epling appeals, arguing that the trial court erred in imposing consecutive sentences because it did not consider all of the legally relevant factors contained in Utah Code section 76–3–401 before doing so. *See* Utah Code Ann. § 76–3–401(2) (2008). Epling also contends that the trial court did not consider some mitigating evidence and that it failed to give proper weight to the mitigating evidence it did consider. In addition, Epling asserts that the trial court relied on evidence it should not have considered. Because trial courts are afforded "wide latitude in sentencing," *State v. Jimenez*, 2007 UT App 116, ¶ 8, 158 P.3d 1128, a court's sentencing decision is reviewed for an abuse of discretion, *see State v. Valdovinos*, 2003 UT App 432, ¶ 14, 82 P.3d 1167. A court exceeds its discretion if it acts with inherent unfairness in imposing a sentence, imposes a clearly excessive sentence, or fails to consider all legally relevant factors. *See State v. Montoya*, 929 P.2d 356, 358 (Utah Ct.App. 1996). "A court abuses its discretion in imposing consecutive sentences only if no reasonable person would take the view taken by the sentencing court." *State v. Thorkelson*, 2004 UT App 9, ¶ 12, 84 P.3d 854 (internal quotation marks omitted).

## ANALYSIS[2]

### I. The Trial Court Considered Each of the Statutory Factors.

■■■ ¶ 9 Utah Code section 76–3–401 governs the imposition of consecutive sen-

---

mitted to continually missing anger management classes associated with the domestic violence incident.

**2.** Because Epling asked the trial court to impose concurrent sentences, we reject the State's argu-

ment that Epling's challenge to the consecutive sentences is not preserved. *See State v. Valdez*, 2008 UT App 329, ¶ 6, 194 P.3d 195 (mem.) (concluding that the defendant's claim that the trial court did not consider all legally relevant

tences and provides, "In determining whether state offenses are to run concurrently or consecutively, the court shall consider the gravity and circumstances of the offense, the number of victims, and the history, character, and rehabilitative needs of the defendant." Utah Code Ann. § 76–3–401(2). However, in the sentencing context, "as a general rule this court upholds the trial court even if it failed to make findings on the record whenever it would be reasonable to assume that the court actually made such findings." *State v. Helms*, 2002 UT 12, ¶ 11, 40 P.3d 626 (internal quotation marks omitted). Absent circumstances not present here, "we will not assume that the trial court's silence, by itself, presupposes that the court did not consider the proper factors as required by law. To do so would trample on the deference this court usually gives to the sentencing decisions of a trial court." *Id.; see also id.* ¶ 12 ("Neither our case law nor our statutes require a trial court to make specific findings of fact in a sentencing order.").

¶ 10 The State contends that although the trial court's oral ruling is brief and did not make specific findings of fact with regard to each of the statutory factors, the record reveals that it considered each of them. *See id.* ¶¶ 12–13 ("[T]he brevity of the sentencing order does not make the order and the facts surrounding the order so ambiguous that it would be unreasonable for us to conclude that the trial court properly considered the factors in section [76–3–401(2) ].")." Epling disagrees, arguing that the trial court never indicated on the record that it had read the PSI report. *See generally id.* ¶ 13 (concluding that the trial court considered the statutory factors where the PSI contained evidence related to the factors and the trial court stated at the sentencing hearing that it had read the PSI "carefully"). Instead, Epling contends that the trial court's statement that it did not know if Epling had taken a polygraph test—a fact contained in the PSI—proves that it did not read that report. We are not convinced that the trial court's comments lead to this conclusion.

factors was preserved when defense counsel asked the trial court to follow the recommenda-

¶ 11 At the sentencing hearing, the trial court responded to the defense's reliance on Epling's polygraph results as a reason for imposing a lenient sentence by indicating that it did not consider polygraph tests particularly helpful in making sentencing decisions. Because the legislature has not included polygraph results as a factor that must be considered, we conclude that the trial court did not exceed its discretion in failing to give them any weight. *Cf. State v. Vigil*, 840 P.2d 788, 794 (Utah Ct.App.1992) (concluding that the trial court did not exceed its discretion in refusing to consider the results of a polygraph test offered by the defendant at sentencing, which the defendant claimed were pertinent to the ultimate question of guilt, because the jury had already determined the defendant's guilt). Furthermore, where the trial court considered the information useless, we are unwilling to assume that the court's comment that it did not know whether Epling had taken such a test indicates that the trial court failed to read the PSI rather than that it did not retain this unhelpful information. Furthermore, the trial court's other comments indicate that it was familiar with Epling's background. Indeed, the trial court's reference to Epling's "involvement with pornography"—information contained only in the psychosexual evaluation—indicates that the court read and considered that report in making its decision. In addition, the parties presented the court with evidence relating to the relevant sentencing factors at the sentencing hearing. *See State v. Royce*, 2005 UT App 389U, para. 6, 2005 WL 2234842 (mem.) (concluding that even if the trial court did not read the psychosexual evaluation report, the defendant was not prejudiced because defense counsel thoroughly apprised the court of the relevant portions of the report and the court had before it sufficient evidence regarding facts pertinent to the defendant's background). Thus, there is nothing in the trial court's comment about polygraph results that convinces us that the trial court exceeded its

tion in the PSI for concurrent terms).

discretion by failing to consider the factors identified by the legislature.

■ ¶ 12 With respect to the first of those statutory factors, the gravity and circumstances of the offenses, *see* Utah Code Ann. § 76–3–401(2), the trial court indicated that it had reviewed the videotape of Stepson's CJC interview and characterized the crimes as "horrendous." That interview reveals that Stepson suffered sexual and physical abuse from Epling, including assault with a knife, and that Epling threatened to kill Stepson and his family if Stepson reported the abuse. Although Epling contends that the CJC interview was inadmissible, "[e]vidence that is inadmissible during the guilt phase of a trial may be admissible for sentencing purposes." *See State v. Johnson*, 856 P.2d 1064, 1071 (Utah 1993), *superseded by statute on other grounds by* Utah Code Ann. § 76–5–406.5(1)(k) (1999), *as recognized in State v. Tryba*, 2000 UT App 230, ¶¶ 19–20, 8 P.3d 274. While "a sentencing judge [must] act on reasonably reliable and relevant information in exercising discretion in fixing a sentence," *id.* (internal quotation marks omitted), Epling points to nothing about the CJC tape that renders it either irrelevant or unreliable. Indeed, the trial court expressly noted that Stepson's account was articulate and detailed. Thus, the trial court properly considered the gravity and circumstances of the crimes.

¶ 13 The next statutory factor is "the number of victims." *See* Utah Code Ann. § 76–3–401(2) (2008). Although the charges stemmed from incidents involving only Stepson, Stepson reported during the CJC interview that he had witnessed similar incidents involving Epling and Stepson's half-brother. The trial court was aware of that information due to its review of the CJC interview.

¶ 14 The statute also requires that the sentencing judge consider "the history, character, and rehabilitative needs of the defendant." *See id.* With respect to Epling's criminal history, defense counsel alerted the trial court to the fact that Epling had no history of "behavior like this," and that his criminal history involved only a few misdemeanors. In contrast, the prosecutor reported that Epling had been recently arrested and convicted for providing alcohol to a minor. The trial court also considered mitigating and aggravating information about Epling's character. At sentencing, the prosecutor spoke about Epling's alcoholism and the psychosexual evaluation's conclusion that Epling lacks empathy for the victim, struggles with impulsivity, and is manipulative. However, Epling's former employer indicated that Epling was devoted to his own children and was always welcome in the employer's home with the employer's five children. In addition, the psychosexual report indicated that Epling had shown arousal to scenes involving adult women, had shown minor arousal to scenes involving underage females whose ages and descriptions were not disclosed, and self-reported repulsion to sexual scenes involving children.

¶ 15 Finally, the record contains evidence indicating that the trial court considered Epling's rehabilitative needs. *See id.* The trial court explained that because Epling refused to take responsibility for the crimes, he was not amenable to treatment. *See State v. Jimenez*, 2007 UT App 116, ¶ 16, 158 P.3d 1128 (upholding consecutive sentences and recognizing that the defendant did not admit responsibility for the crimes and that the PSI concluded that the defendant was not amenable to treatment); *cf. McKune v. Lile*, 536 U.S. 24, 31–33, 122 S.Ct. 2017, 153 L.Ed.2d 47 (2002) (recognizing in a plurality opinion that "[a]n important component of [sex offender] rehabilitation programs requires participants to confront their past and accept responsibility for their misconduct," and determining that prison privileges were properly withheld when inmate refused to do so). The trial court was also aware of Epling's uncooperative behavior during the psychosexual evaluation. Consequently, the trial court adequately considered Epling's rehabilitative needs.

¶ 16 In sum, the record indicates that the trial court considered each of the statutory factors before imposing the sentence.

II. The Trial Court Did Not Exceed Its Discretion by Refusing To Consider Epling's Claims of Innocence at Sentencing.

■ ¶ 17 We also reject Epling's argument that the trial court acted unfairly in not

considering his claims of innocence during sentencing. Rather than submit his claims to a jury for adjudication, Epling made the choice to plead no contest in exchange for reduced charges. And he did so despite being repeatedly warned that his no contest pleas would be treated as guilty pleas for sentencing purposes. During the plea colloquy, the trial court explained to Epling that by entering a guilty plea, he was waiving his right to the presumption of innocence. In his signed statement supporting his plea, Epling attested, "I understand that by pleading no contest I will be admitting that I committed the crimes listed above."[3] Defense counsel also acknowledged that he had warned Epling that the court would consider his no contest plea "just as a guilty plea for all practical purposes." While Epling may now question the wisdom of entering the no contest pleas, the trial court properly treated them as guilty pleas for sentencing purposes. *See* Utah Code Ann. § 77–13–2(3) (2008) ("A plea of no contest indicates the accused does not challenge the charges in the information or indictment and if accepted by the court shall have the same effect as a plea of guilty and imposition of sentence may be rendered in the same manner as if a plea of guilty had been entered.").

### III. The Trial Court Did Not Exceed Its Discretion by Considering Epling's Involvement in Legal Conduct.

¶ 18 Epling also objects to the trial court's expressed concern about his involvement with "pornography."[4] According to Epling, because this conduct was not illegal, i.e., there was no allegation that he was involved with pornography involving children, it was protected by the First Amendment of the United States Constitution.[5] *See* U.S. Const. amend. I. Therefore, he contends

that the trial court could not properly consider it as a factor supporting its decision to impose consecutive sentences. However, there is nothing that prevents a trial court from considering a defendant's legal activities in making a sentencing determination. *See, e.g., State v. Alfatlawi,* 2006 UT App 511, ¶ 51, 153 P.3d 804 (upholding a consecutive sentencing decision where the trial court determined that the defendant's bad attitude, as exhibited by the defendant's diatribe of threats and obscenities, weighed in favor of consecutive sentences); *cf. State v. Montoya,* 929 P.2d 356, 360 (Utah Ct.App.1996) (upholding consecutive sentences where the trial court relied on an assessment that the defendant was "pessimistic, apathetic, emotionally inhibited and controlled, maladaptive under stress, assaultive, resentful, hostile, and aggressive"). It was within the trial court's discretion to consider such evidence.

### IV. The Trial Court Did Not Exceed Its Discretion by Imposing Consecutive Sentences.

¶ 19 The Utah Supreme Court has explained that a trial court exceeds its discretion in a sentencing decision when it fails to consider all legally relevant factors, imposes a sentence that exceeds the statutory limits, or imposes a sentence that is inherently unfair. *See State v. Bluff,* 2002 UT 66, ¶ 66, 52 P.3d 1210. As discussed, the trial court considered all of the relevant legal factors in sentencing Epling. Further, Epling has not argued that the sentence imposed exceeded the legal limits established by the legislature. Relying on *State v. Galli,* 967 P.2d 930 (Utah 1998), however, Epling essentially argues that the sentence is unfair because the mitigating evidence calls for concurrent, rather

---

**3.** This signed statement further provides, "I know that by pleading no contest to a crime that carries a mandatory penalty, I will be subjecting myself to serving a mandatory penalty for that crime," and, "I know that if there is more than one crime involved, the sentences may be imposed one after another (consecutively), or they may run at the same time (concurrently)."

**4.** Whether the material Epling self-reported as viewing was in fact "pornography" in the legal sense, *see generally Miller v. California,* 413 U.S.

15, 18–19 & n. 2, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973); *City of St. George v. Turner,* 860 P.2d 929, 933–36 (Utah 1993), Epling, the psychosexual evaluator, and counsel have used that term in describing it. The trial court simply employed the same term to reference the material, without suggesting that it met the legal definition.

**5.** The trial court's comments seem to be based upon the psychosexual report, which indicates that Epling self-reported viewing *Playboy* magazines and programs such as *Girls Gone Wild.*

than consecutive sentences. We do not find *Galli* persuasive.

¶ 20 First, the statute in effect at the time of the supreme court's decision in *Galli* favored concurrent over consecutive sentences. *See id.* at 938. Since *Galli*, the sentencing statute has been rewritten, leaving the decision of whether to impose concurrent or consecutive sentences within the trial court's discretion. *See* Act of Mar. 18, 2002, ch. 129, § 1, 2002 Utah Laws 129 (codified at Utah Code Ann. § 76–3–401 (2008)) (deleting the following sentence: "Sentences for state offenses shall run concurrently unless the court states in the sentence that they shall run consecutively," and adding a requirement that the sentencing court indicate whether the sentences are to run consecutively or concurrently). Second, *Galli* is distinguishable both because of the underlying circumstances considered at sentencing and because of the length of the sentence imposed. In *Galli*, the defendant committed a string of armed robberies but did not inflict any physical injuries on his victims, was supposedly armed with only a pellet gun, and took a relatively small amount of money. *See* 967 P.2d at 938. Further, his criminal history consisted of only traffic violations and one misdemeanor; he voluntarily confessed and admitted responsibility for the crimes; and although he fled from the jurisdiction, his conduct during this time showed that "he ha[d] the ability to improve himself and become a productive, law-abiding citizen once he ... paid his debt to society." *Id.* Further, the combination of the mandatory minimum sentences for each of the crimes resulted in the defendant being required to serve fifteen years before he could be considered for parole. *See id.* at 932–33. Based on the unique facts of that case, the supreme court concluded that the trial court exceeded its discretion in imposing consecutive, rather than concurrent sentences. *See id.* at 938.

¶ 21 Here, the crimes involve repeated and violent sexual conduct, resulting in Stepson's ongoing and serious emotional fragility. Epling has not accepted responsibility for the crimes and the trial court concluded that he was not amenable to treatment. While Epling's criminal history, like the defendant in *Galli*, is not extensive, the trial court acted well within its discretion when it determined that Epling's sentences should run consecutively, rather than concurrently. *See State v. Russell*, 791 P.2d 188, 192 (Utah 1990) ("One factor in mitigation or aggravation may weigh more than several factors on the opposite scale."). Finally, although the trial court here recommended that Epling serve a minimum eighty-six months, Epling's mandatory minimum sentence is one year for each charge, for a total of a three-year minimum sentence due to the consecutive sentences. *See* Utah Code Ann. § 76–5–404.1(3) (2008); *id.* § 76–3–203(2). Thus, contrary to Epling's suggestion, the trial court has not abrogated the responsibility of the Board of Pardons and Parole to monitor or its flexibility to respond to Epling's progress while incarcerated for purposes of making parole decisions. *See State v. Schweitzer*, 943 P.2d 649, 652 (Utah Ct.App.1997); *State v. Valdez*, 2008 UT App 329, ¶¶ 13–14, 194 P.3d 195 (mem.) (upholding the defendant's five consecutive sentences of zero to five years and noting that the "trial court merely shifted the final determination of the length of [d]efendant's sentence to the Board of Pardons").

¶ 22 Although Epling would have liked the trial court to rely more heavily on the factors that he considers mitigating, he has not shown that the trial court failed to consider these factors completely. *See Schweitzer*, 943 P.2d at 652 ("Although defendant asserts that these factors favor a sentence ordering rehabilitation rather than incarceration, defendant does not show that the trial court failed to consider these factors."). Rather, Epling objects to how the trial court weighed those factors in reaching its ultimate decision to impose consecutive sentences. The fact that the trial court assessed the relevant factors differently than Epling would have liked does not indicate that it exceeded its discretion. *See generally State v. Helms*, 2002 UT 12, ¶ 14, 40 P.3d 626 ("[T]he fact that [defendant] views his situation differently than did the trial court does not prove that the trial court neglected to consider the factors listed in section [76–3–401(2) ].").

## CONCLUSION

¶ 23 The trial court's expressed uncertainty about whether a polygraph examination was performed on Epling does not prove that the trial court failed to read the PSI. Further, the record reflects that the trial court considered each of the statutory sentencing factors. The trial court was not required to consider Epling's claims of innocence and was not precluded from considering the CJC interview or Epling's involvement in legal activities in determining whether to impose concurrent or consecutive sentences. Finally, Epling's sentence is not inherently unfair and is within the legal limits for the subject crimes. Consequently, the trial court did not exceed its discretion in ordering Epling to serve his sentences on the three crimes consecutively.

¶ 24 Affirmed.

¶ 25 WE CONCUR: JAMES Z. DAVIS, Presiding Judge and GREGORY K. ORME, Judge.