2016 UT App 2

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
THOMAS RANDALL AINSWORTH,
Appellant.

Opinion
No. 20130924-CA
Filed January 7, 2016

Third District Court, Salt Lake Department
The Honorable Deno G. Himonas
No. 121902706

David P.S. Mack, Caleb J. Cunningham, and Lori J.
Seppi, Attorneys for Appellant

Sean D. Reyes and Jeffrey S. Gray, Attorneys
for Appellee

SENIOR JUDGE RUSSELL W. BENCH authored this Opinion, in which
JUDGES J. FREDERIC VOROS JR. and STEPHEN L. ROTH concurred.[1]

BENCH, Senior Judge:

¶1     Thomas Randall Ainsworth appeals his convictions and
sentences for three counts of driving with a measurable amount
of a controlled substance in his body and negligently causing
death or serious bodily injury, second-degree felonies. *See* Utah
Code Ann. § 58-37-8(2)(g)–(h) (LexisNexis Supp. 2015). We
vacate Ainsworth's second-degree felony convictions and
remand for the district court to enter a judgment of conviction

---

1. The Honorable Russell W. Bench, Senior Judge, sat by special
assignment as authorized by law. *See generally* Utah R. Jud.
Admin. 11-201(6).

for three third-degree felonies and to resentence him accordingly.

## BACKGROUND

¶2      Ainsworth's actions led to a great tragedy. On December 24, 2011, Ainsworth drove over a median into oncoming traffic and crashed head-on into another vehicle. The driver and front passenger sustained serious injury as a result of the crash, and their eighteen-month-old child was killed. Ainsworth informed police that he had dropped his cell phone on the floor of his vehicle and was reaching for it when he lost control of the vehicle. Following the accident, Ainsworth's blood tested positive for methamphetamine.

¶3      Ainsworth was charged with three counts of driving with a measurable amount of a controlled substance in the body and negligently causing death or serious bodily injury, each a second-degree felony. Ainsworth moved to amend one of these counts to automobile homicide, a third-degree felony, and the other two to driving under the influence of alcohol or drugs and causing serious bodily injury (DUI With Serious Injury), also a third-degree felony, on the ground that section 58-37-8(2)(g) and (h) of the Utah Code (the Measurable Amount Statute), under which he was charged, violate the Utah Constitution's uniform operation of laws provision. In the alternative, he moved the court to reduce all three of his charges to third-degree felonies. The district court denied Ainsworth's motion. Ainsworth then moved the court to declare the Measurable Amount Statute unconstitutional as applied and to reconsider the motion to amend. The district court again denied Ainsworth's motion.

¶4      Ainsworth pleaded guilty to all three charges under the Measurable Amount Statute but reserved his right to appeal the constitutionality of the statute. Ainsworth requested concurrent sentencing, but the district court ordered that Ainsworth serve

three consecutive prison terms of one to fifteen years each. Ainsworth now appeals.

ISSUES AND STANDARDS OF REVIEW

¶5    Ainsworth first asserts that the district court erred in concluding that the Measurable Amount Statute was constitutional. "Constitutional challenges to statutes present questions of law, which we review for correctness." *State v. Robinson*, 2011 UT 30, ¶ 7, 254 P.3d 183 (citation and internal quotation marks omitted).

¶6    Ainsworth also asserts that the district court exceeded its discretion by imposing consecutive sentences. "Because trial courts are afforded wide latitude in sentencing, a court's sentencing decision is reviewed for an abuse of discretion." *State v. Epling*, 2011 UT App 229, ¶ 8, 262 P.3d 440 (citation and internal quotation marks omitted).

ANALYSIS

I. Constitutionality of the Measurable Amount Statute

¶7    Ainsworth asserts that the Measurable Amount Statute violates Article I, Section 24 of the Utah Constitution, known as the uniform operation of laws provision, by making impermissible distinctions between those who may be charged under the Automobile Homicide Statute and the DUI With Serious Injury Statute and those who may be charged under the Measurable Amount Statute.

¶8    Under the Automobile Homicide Statute, a person who, while "under the influence of alcohol, any drug, or the combined influence of alcohol and any drug to a degree that renders the person incapable of safely operating a vehicle," "operates a

motor vehicle in a negligent manner causing the death of another" commits a third-degree felony. Utah Code Ann. § 76-5-207(2)(a) (LexisNexis 2012). Under the DUI With Serious Injury Statute, a person who, while "under the influence of alcohol, any drug, or the combined influence of alcohol and any drug to a degree that renders the person incapable of safely operating a vehicle," "inflicted serious bodily injury upon another as a proximate result of having operated the vehicle in a negligent manner" also commits a third-degree felony. *Id.* §§ 41-6a-502(1)(b), -503(2)(a) (2014). But under the Measurable Amount Statute, a person who, "in an offense not amounting to a violation of [the Automobile Homicide Statute]," "knowingly and intentionally [has] in the person's body any measurable amount" of a Schedule I or II controlled substance (such as methamphetamine) without a valid prescription, "operates a motor vehicle . . . in a negligent manner," and causes either death or serious bodily injury to another commits a second-degree felony. *Id.* § 58-37-8(2)(a)(i), (g), (h)(i) (Supp. 2015).

¶9    Ainsworth asserts that the Measurable Amount Statute violates the uniform operation of laws provision in two ways: first, by distinguishing between those who have a prescription for a controlled substance and those who do not and, second, by classifying a violation of the Measurable Amount Statute by use of a Schedule I or II controlled substance as a second-degree felony, while classifying the more culpable offenses of Automobile Homicide and DUI With Serious Injury as third-degree felonies. We agree with the State that the legislature has a reasonable objective for distinguishing between prescription and nonprescription users of controlled substances. However, there does not appear to be any rational basis for punishing individuals who have "any measurable amount" of controlled substance in their bodies more harshly than individuals who have an incapacitating amount of the substance in their bodies.

¶10    The uniform operation of laws provision mandates that "[a]ll laws of a general nature shall have uniform operation." Utah Const. art. I, § 24. This provision is an "analogue to the federal due process guarantee," *Wood v. University of Utah Med. Ctr.*, 2002 UT 134, ¶ 33, 67 P.3d 436, but may, "in some circumstances, [be] more rigorous than the standard applied under the federal constitution," *Gallivan v. Walker*, 2002 UT 89, ¶ 33, 54 P.3d 1069 (citation and internal quotation marks omitted).

> In analyzing the constitutionality of a statutory scheme under the uniform operation of laws provision[] we engage in a three-part inquiry. First, we determine what, if any, classification is created under the statute. Second, we inquire into whether the classification imposes on similarly situated persons disparate treatment. Finally, we analyze the scheme to determine if the legislature had any reasonable objective that warrants the disparity.

*State v. Drej*, 2010 UT 35, ¶ 34, 233 P.3d 476 (citations and internal quotation marks omitted). To determine whether the legislature had a reasonable objective to warrant a disparity, we must consider "(1) whether the classification is reasonable, (2) whether the objectives of the legislative action are legitimate, and (3) whether there is a reasonable relationship between the classification and the legislative purpose." *State v. Robinson*, 2011 UT 30, ¶ 22, 254 P.3d 183. "Broad deference is given to the legislature when assessing the reasonableness of its classifications and their relationship to legitimate legislative purposes." *Id.* ¶ 23 (citation and internal quotation marks omitted).

¶11    Ainsworth first challenges the Measurable Amount Statute's distinction between those who use controlled substances without a prescription and those who use them with

a prescription. Those who have a prescription for a controlled substance may be charged only under the Automobile Homicide Statute or the DUI With Serious Injury Statute, not the Measurable Amount Statute. *See* Utah Code Ann. § 58-37-8(2)(a)(i), (g)(i) (exempting from the Measurable Amount Statute those who have a valid prescription). In other words, unlike nonprescription users, prescription users can be charged with no more than a third-degree felony[2] and can be convicted only if the State demonstrates that they were intoxicated to a degree that rendered them incapable of safely operating a motor vehicle. *See id.* § 41-6a-503(2)(a) (2014); *id.* § 76-5-207(2)(a) (2012). Thus, the Measurable Amount Statute creates a classification. Because the same drugs may be used by both types of users and the existence of a prescription presumably does not alter the effect of the drug, we conclude that prescription and nonprescription users of controlled substances are similarly situated.

¶12 However, the classification does not violate the uniform operation of laws provision, because the legislature had a reasonable basis for making the classification. Ainsworth asserts that the distinction between prescription and nonprescription users of methamphetamine is not supported by a reasonable legislative objective "because the harm presented by a person driving with methamphetamine in his system is the same regardless of whether he has a prescription." Ainsworth's assertion rests on the mistaken assumption that the only rational objective the legislature could have in distinguishing between prescription and nonprescription users of controlled substances

---

2. Automobile homicide may be a second-degree felony if the defendant was criminally negligent or had a previous DUI-related conviction, *see* Utah Code Ann. § 76-5-207(2)(b), (3) (LexisNexis 2012), but Ainsworth was not charged with either of those variations of automobile homicide, and they are not at issue in this case.

is the relative danger they pose when driving. But the legislature also has a legitimate interest in regulating the use of controlled substances due to their high potential for abuse. Those who use such substances pursuant to a valid prescription are subject to controls and safeguards, including, among other things, limits on their dosages and regulation of manufacturing consistency and quality, while those who obtain controlled substances illegally are not subject to any such constraints. Thus, the legislature has an interest in deterring the illegal use of controlled substances. The legislature has no concomitant interest in deterring the legal use of prescribed medications so long as that use does not render the patient incapable of safely operating a motor vehicle. Charging nonprescription controlled-substance users that have "any measurable amount" of such substances in their bodies, while charging prescription users only when they are demonstrably unsafe to drive, is rationally related to the reasonable objectives of the legislature.

¶13 Ainsworth next challenges the Measurable Amount Statute's distinction between those whose bodies contain "any measurable amount of a controlled substance," Utah Code Ann. § 58-37-8(g)(i) (LexisNexis Supp. 2015), and those who are under the influence of any controlled substance "to a degree that renders the person incapable of safely operating a vehicle," *see id.* § 41-6a-502(1)(b) (2014); *id.* § 76-5-207(2)(a)(ii) (2012). He asserts that, as applied to users of Schedule I and II controlled substances,[3] this distinction is not related to a reasonable

---

3. Although users of other types of controlled substances are also subject to this classification, the degree of crime they can be charged with is lesser or equal to what they would be charged with under the Automobile Homicide Statute or the DUI With Serious Injury Statute. Because Ainsworth's argument concerning this classification is premised on the fact that the Measurable Amount Statute imposes a greater penalty for a

(continued…)

legislative objective, because it punishes less culpable offenders with a significantly higher level of punishment.

¶14 The State asserts that no classification is created by this provision of the Measurable Amount Statute because the Automobile Homicide Statute and the DUI With Serious Injury Statute govern only drivers who are under the influence of legal intoxicants (alcohol or prescription drugs), not those who are under the influence of illegal intoxicants (nonprescribed controlled substances). Thus, according to the State, regardless of the degree of intoxication, negligently causing injury or death of another while driving with any measurable amount of a controlled substance for which the user does not have a prescription should be prosecuted under the Measurable Amount Statute, not the Automobile Homicide Statute or the DUI With Serious Injury Statute.

¶15 However, the plain language of the Measurable Amount, Automobile Homicide, and DUI With Serious Injury Statutes belies the State's interpretation. Both the Automobile Homicide Statute and the DUI With Serious Injury Statute apply to individuals under the influence of "any drug." *See* Utah Code Ann. § 41-6a-502(1)(b) (LexisNexis 2014); *id.* § 76-5-207(2)(a)(ii) (2012). Both statutes include controlled substances within the definition of "drug." *Id.* § 41-6a-501(1)(c)(i) (2014) (defining

---

(…continued)

lesser crime, it challenges the constitutionality of the statute only as applied to Schedule I and II users. In requesting that his charges be reduced to third-degree felonies, Ainsworth's argument presumes that a charge equal to what a defendant could have been charged with under the Automobile Homicide Statute or the DUI With Serious Injury Statute would not violate the uniform operation of laws provision, so we assume, without deciding, that this is the case.

"drug" for purposes of the DUI With Serious Injury Statute to include controlled substances); *id.* § 76-5-207(1)(a)(i) (2012) (defining "drug" for purposes of the Automobile Homicide Statute to include controlled substances); *id.* § 58-37-2(1)(f) (Supp. 2015) (defining "controlled substance" to include substances listed in Schedules I, II, III, IV, or V of the Utah Controlled Substances Act and the federal Controlled Substances Act). Neither statute distinguishes between drugs used in accordance with a valid prescription and drugs used illegally. Thus, by their plain language, these statutes apply to the use of both prescription and nonprescription controlled substances. Furthermore, the Measurable Amount Statute implicitly identifies the Automobile Homicide Statute as defining an offense that could apply to users of illegal drugs by specifically distinguishing it from the Measurable Amount Statute, stating that "[a] person is subject to the penalties" of the Measurable Amount Statute when the person violates the statute "*in an offense not amounting to a violation of* [*the Automobile Homicide Statute*]." *Id.* § 58-37-8(g) (Supp. 2015) (emphasis added). This indicates that the legislature anticipated that the Automobile Homicide Statute would apply to nonprescription users of controlled substances under certain circumstances.

¶16    Thus, we agree with Ainsworth that the three statutes create a classification distinguishing between similarly situated persons—users of nonprescribed controlled substances who cause serious injury or death by negligently operating a motor vehicle—based on their degree of intoxication: Those who are intoxicated by legal *or* illegal substances to a degree that they are incapable of safely operating a vehicle are to be prosecuted under the Automobile Homicide Statute or the DUI With Serious Injury Statute. On the other hand, those who have consumed illegal substances to a lesser degree, but still have a measurable amount in their bodies, are to be prosecuted under the Measurable Amount Statute. Because a conviction under the Measurable Amount Statute is a second-degree felony when the

individual has a measurable amount of a Schedule I or II controlled substance in his or her body, while convictions under the other two statutes are third-degree felonies regardless of the type of controlled substance used, unimpaired users of Schedule I and II controlled substances are ultimately subject to a greater charge for what is otherwise defined to be a lesser crime.

¶17    There does not appear to be any rational basis for charging users of nonprescribed Schedule I or II controlled substances who have a measurable amount of controlled substance in their body, but not enough to render them incapable of safely operating a motor vehicle, with a higher-degree crime than users of nonprescribed Schedule I or II controlled substances who have so much controlled substance in their body that they are demonstrably unsafe to operate a vehicle. Thus, we agree with Ainsworth that the second-degree designation in subsection (2)(h)(i) in the Measurable Amount Statute violates the uniform operation of laws provision of the Utah Constitution.

¶18    When a statutory provision is determined to be unconstitutional, the remainder of the statute will nevertheless be allowed to stand if it "is operable and still furthers the intended legislative purpose." *State v. Lopes*, 1999 UT 24, ¶ 19, 980 P.2d 191. The legislature has determined that "[i]f any provision of [the Measurable Amount Statute], or the application of any provision to any person or circumstances, is held invalid, the remainder of [the Measurable Amount Statute] shall be given effect without the invalid provision or application." Utah Code Ann. § 58-37-8(17) (LexisNexis Supp. 2015). Thus, striking the second-degree designation in subsection (2)(h)(i) of the Measurable Amount Statute does not undermine the legislative purpose of the statute. The only question remaining, then, is whether subsection (2)(h)(i) can remain operable without its second-degree designation. "An offense designated as a felony either in [the criminal code] or in another law, without

specification as to punishment or category, is a felony of the third degree." *Id.* § 76-3-103 (2012). Therefore, subsection (2)(h)(i) can remain operable as a third-degree felony. Accordingly, we vacate Ainsworth's convictions and remand with instructions for the district court to re-enter them as third-degree felonies.

## II. Consecutive Sentencing

¶19  Because we must vacate Ainsworth's convictions and remand for the district court to adjust the degree of the convictions, which will require that the district court also resentence him, we need not address Ainsworth's argument that the district court erred in imposing consecutive sentences. Nevertheless, as this issue has been fully briefed and is likely to arise on remand, we elect to address it. *See State v. James*, 819 P.2d 781, 795 (Utah 1991).

¶20  Ainsworth asserts that the district court exceeded its discretion in imposing consecutive sentences because it failed to adequately consider his history, character, and rehabilitative needs. *See* Utah Code Ann. § 76-3-401(2) (LexisNexis 2012). Although "[a] court exceeds its discretion if it . . . fails to consider all legally relevant factors," *State v. Epling*, 2011 UT App 229, ¶ 8, 262 P.3d 440, "[i]t is the defendant's burden to demonstrate that the trial court failed to properly consider legally relevant factors," *State v. Bunker*, 2015 UT App 255, ¶ 3, 361 P.3d 155. A defendant cannot meet this burden by merely pointing to . . . the existence of mitigating circumstances." *Id.* "If the record shows that the trial court has reviewed information regarding the relevant legal factors, we can infer that the trial court adequately considered those factors." *Id.*

¶21  Ainsworth argues that the court failed to adequately consider the fact that his offenses arose out of a single criminal episode resulting from negligent rather than intentional behavior; that despite not having been amenable to rehabilitation in the past, he had expressed genuine remorse and

a desire to accept responsibility for his actions; that he has participated in substance-abuse classes while in jail and has a newfound desire to participate in substance-abuse treatment; that he is employed; and that he has strong emotional health and family connections. While these factors could have supported a decision to impose concurrent sentences, they do not mandate such an outcome and we see no indication that the district court failed to consider them. On the contrary, the district court indicated that it had "carefully considered [Ainsworth's] history and rehabilitative needs in reaching [its] decision" but concluded that the "nature, circumstances and gravity of the offense[,] . . . as well [as] the number of victims" made consecutive sentencing appropriate. "The fact that the trial court assessed the relevant factors differently than [Ainsworth] would have liked does not indicate that it exceeded its discretion." *See Epling*, 2011 UT App 229, ¶ 22.

CONCLUSION

¶22    We agree with Ainsworth that subsection (2)(h)(i) of the Measurable Amount Statute violates the uniform operation of laws provision of the Utah Constitution. Thus, we vacate Ainsworth's convictions and remand with instructions for the district court to enter his convictions as third-degree felonies and to resentence him accordingly.[4]

---

4. In reducing the degree of Ainsworth's convictions, as we believe the law requires, we by no means wish to discount the tragic losses suffered by the victims of Ainsworth's crimes.