**2016 UT App 238**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
NATHAN SEXTON,
Appellant.

Memorandum Decision
No. 20151069-CA
Filed December 8, 2016

Second District Court, Ogden Department
The Honorable Joseph Bean
No. 151902086

Samuel P. Newton, Attorney for Appellant

Christopher F. Allred and Thomas A. Pedersen,
Attorneys for Appellee

JUDGE STEPHEN L. ROTH authored this Memorandum Decision, in
which JUDGES J. FREDERIC VOROS JR. and KATE A. TOOMEY
concurred.

ROTH, Judge:

¶1      Nathan Sexton appeals his sentences for possession of a
controlled substance and possession of drug paraphernalia, both
class B misdemeanors. Sexton contends that the district court
abused its discretion when it ordered that his sentences be
served consecutively to the prison sentence he was already
serving. We affirm.

¶2      In May 2015, while on probation[1] and in treatment for drug addiction at the Northern Utah Community Correctional Center (NUCCC), Sexton was caught with "spice," a controlled substance, in his room. Based on this incident, Sexton's probation was revoked, and he was apparently sent to prison. Sexton was also charged with, and pled guilty to, class B misdemeanor possession of a controlled substance inside a correctional facility and possession of drug paraphernalia. Sexton waived the waiting time for sentencing, and the court sentenced him immediately.

---

1. There was some initial disagreement at the sentencing hearing regarding whether Sexton was on probation at the time of this incident or whether he was on parole. The prosecutor initially represented that Sexton was on parole and raised the statutory presumption that sentences be imposed consecutively if a criminal offense is committed while the defendant is on parole. *See* Utah Code Ann. § 76-3-401(3) (LexisNexis 2012) (providing that if "the latter offense is committed while the defendant is . . . on parole," then "[t]he court shall order that sentences for [the] offenses run consecutively"). But Sexton immediately objected and stated that at the time of the incident he had not yet been to prison. Instead, he said that he was "on probation to go to NUCCC" and that he "hadn't been to prison yet." His statement was corroborated at the hearing by an "unidentified speaker," who said that Sexton was indeed "on probation." The court appears to have accepted that Sexton was on probation rather than on parole at the time of the offenses at issue in this case, and it analyzed the basis for the consecutive sentences accordingly and without reference to the presumption for offenses committed while on parole. While it is unclear why Sexton was in prison at the time of sentencing, for purposes of our decision we accept that Sexton was on probation when the offenses occurred, not parole.

¶3 During sentencing, Sexton requested that the sentences for the two counts of possession run concurrently—both with each other and with the prison sentence he was then serving—and that the court allow him to serve the misdemeanor sentences at the prison. Sexton argued that concurrent sentencing was appropriate because the original charges that led to both his probation in NUCCC and his current prison term were from December 2013. He stated that he had "been going through all this for quite a while now" and had "already done almost four months [in prison]" because of this incident and that he "need[ed] to get out [of prison] and get a job and progress [in his] life."

¶4 The State requested that the court run the sentences consecutively, both to each other and to Sexton's current prison sentence. The prosecutor pointed out that, at the time of the conduct underlying the charges, Sexton was in treatment at NUCCC and emphasized that there was a "problem . . . in NUCCC with drugs" and that it was "appropriate to send a message that we're going to run those [sentences] consecutive when somebody possesses a controlled substance while in NUCCC." The court was also informed that at the time of the possession charges, Sexton was in "his fourth attempt at . . . trying to complete [treatment at] NUCCC," that he had "struggled . . . all four times," and that inmates bringing drugs into the facility was detrimental to the progress of the "other people [in NUCCC] who are trying to be successful and complete their probation."

¶5 The court sentenced Sexton to 180 days on each possession charge and ordered that the sentences be served concurrently with each other but consecutively to Sexton's existing prison sentence. The court allowed Sexton to serve the additional time in prison rather than at the Weber County Jail but declined to allow credit for the four months that Sexton had served in prison since his probation violation, reasoning that it

was not appropriate to "give . . . credit for time that [Sexton had] served in violation of some other sentencing order."

¶6     The court explained the basis of its sentencing decision to Sexton, stating that "there's some frustration . . . among [Adult Probation and Parole] and a lot of the people working with you that you've had a lot of opportunities given to you." The court stated that it understood that "addiction is tough" and "a very difficult thing," but added,

> You['ve] got to make some wise choices when you're out on the street. Most people when they are standing where you're standing, they really are determined to stay clean, and I'm sure you're feeling the same. And it's tough when people have it all around you. You've got to figure out some tools to be able to resist that and make better choices.
>
> I think everybody wants to see you be successful, but you're the one that's got to make those choices when the chips are [down], when it's tough. I've given you kind of a middle-of-the-road sentence instead of going as harsh as the State wants. I haven't gone quite that harsh, but I haven't been as lenient either as [defense counsel] or you would like me to be, but it is to send you a message that we've got to try and clean it up. It's got to start somewhere. And I'm not saying it's starting with you, but you're one of those that we're going to get relatively tough on if you're taking [drugs] into NUCCC.

¶7     Sexton appeals the district court's decision to impose his misdemeanor sentences consecutively to the prison term that he was already serving.

¶8 A district court has statutory authority to impose consecutive sentences. Utah Code Ann. § 76-3-401 (LexisNexis 2012). "When sentencing a defendant who is already serving a prison sentence for a prior felony offense, the district court must determine 'if the sentences before the court are to run concurrently or consecutively with any other sentences the defendant is already serving.'" *State v. McDaniel*, 2015 UT App 135, ¶ 5, 351 P.3d 849 (quoting Utah Code Ann. § 76-3-401(1)(b)). In making this determination, the court "shall consider the gravity and circumstances of the offenses, the number of victims, and the history, character, and rehabilitative needs of the defendant." Utah Code Ann. § 76-3-401(2).

¶9 Sexton contends that the district court abused its discretion by ordering his sentences to be served consecutively to his existing prison sentence. In particular, he claims that the court failed to properly consider the statutory factors of the gravity and circumstances of the offense, the lack of a victim, and his rehabilitative needs. Regarding the gravity and circumstances of the offense, Sexton contends that the offense was "relatively minor" because possession of spice is classified as a class A misdemeanor, not a felony like "other major drugs." And according to Sexton, "no one was victimized by the offense." In terms of his rehabilitative needs, he argues that while acknowledging that "addiction is tough," the court nonetheless "failed to appreciate that most offenders will relapse and will relapse on multiple occasions during their struggle with addiction." Citing scientific literature and research regarding the physiological effects of drug addiction and the realities of relapse during the course of treatment and recovery, Sexton contends that the court "failed to treat [his] behavior as . . . symptoms of his disease." Instead, he alleges, the court harshly sentenced him because it fundamentally misunderstood the nature of addiction and mistakenly perceived that Sexton could overcome his drug addiction merely by choosing to do so.

¶10   A sentencing court has wide discretion in sentencing defendants "because [a sentence] necessarily reflects the personal judgment of the court." *State v. Woodland*, 945 P.2d 665, 671 (Utah 1997) (citation and internal quotation marks omitted). While failure to consider "all legally relevant [sentencing] factors" is an abuse of discretion, *State v. Helms*, 2002 UT 12, ¶ 8, 40 P.3d 626 (citation and internal quotation marks omitted), a sentencing court is not required to weigh all the factors equally, *State v. Ashcraft*, 2014 UT App 253, ¶ 5, 338 P.3d 247 (citing *State v. Killpack*, 2008 UT 49, ¶ 59, 191 P.3d 17). And we will not disturb consecutive sentences simply because the court might have "assessed the relevant factors differently" than the defendant. *State v. Epling*, 2011 UT App 229, ¶ 22, 262 P.3d 440.

¶11   To prevail on appeal, the defendant must "demonstrate that the district court did not properly consider all the factors," *McDaniel*, 2015 UT App 135, ¶ 5. A defendant "cannot meet this burden by merely pointing to . . . the existence of mitigating circumstances." *State v. Bunker*, 2015 UT App 255, ¶ 3, 361 P.3d 155. Rather, we will uphold the district court's decision if, based on the record, it is reasonable to assume that the court did properly consider the factors. *See Helms*, 2002 UT 12, ¶ 11. Ultimately, "[a]n appellant can show an abuse of discretion in the district court's weighing of the relevant factors only by demonstrating that no reasonable person would take the view taken by the sentencing court." *McDaniel*, 2015 UT App 135, ¶ 10 (citation and internal quotation marks omitted).

¶12   We are not persuaded that the sentencing court failed to properly consider the relevant factors. Rather, we conclude that Sexton's argument "comes down to a disagreement with the [sentencing] court's weighing of the relevant sentencing factors," *see Bunker*, 2015 UT App 255, ¶ 5, and fails to demonstrate any abuse of the court's broad discretion in this area.

¶13   To begin with, Sexton attempts to downplay the seriousness of his offenses by characterizing them as minor and

victimless. However, the court took a broader view of the circumstances. In particular, the district court expressed its concern that Sexton had been given "a lot of opportunities" with "a lot of people" to succeed with his recovery—the violation marked Sexton's fourth unsuccessful attempt at completing the addiction treatment program at NUCCC. And the court was especially concerned that Sexton had brought the drugs into NUCCC, where the presence and availability of drugs detrimentally affects other residents' ability to successfully complete the program. Indeed, the court explained that, because Sexton brought the drugs into NUCCC, it was going to be "relatively tough on" him to reflect the seriousness of the offense, which given the context went beyond simple possession. And the court noted that it was imposing a "middle-of-the-road" sentence as a consequence for his behavior, recognizing that, although "addiction is tough," Sexton would need to "make better choices" and "try and clean it up" if he was ever going to succeed in recovery. Even though Sexton has a different view from the court of the interrelationship between what he characterizes as no more than a relapse and the severity of its consequences, the fact that the sentencing court viewed the circumstances differently than Sexton is not a basis for overturning his sentence. *See Epling*, 2011 UT App 229, ¶ 22.

¶14 Regarding the rehabilitative needs factor, Sexton points to scientific literature and research concerning the realities of addiction, particularly the frequency—even inevitability—of relapse during the course of treatment and recovery. Sexton contends that the court abused its discretion by not weighing his rehabilitative needs more heavily in the calculus of its sentencing decision. However, none of the literature presented on appeal was presented to the court below. *See State v. Do*, 2015 UT App 147, ¶¶ 9–10, 353 P.3d 172 (suggesting that the reviewing court was not required to take notice of the articles presented by the appellant to establish "the likelihood of relapse among drug addicts" where the appellant "did not present these articles to

the district court at sentencing"); *State v. Vazquez*, 2014 UT App 159, ¶ 5, 330 P.3d 760 (per curiam) (explaining that the appellant had not preserved his argument that the district court did not "fully consider 'the realities of drug addiction'" where the appellant did not argue to the district court that "his relapse was not willful, essentially because he is addicted to drugs and relapses are common among addicts, even those who have successfully completed treatment").

¶15    Moreover, even assuming the literature is properly before us, Sexton has not shown how the isolated quotes that he provides about the difficulties inherent in recovery from addiction somehow establish that, in light of the realities of the disease, it is per se improper under our sentencing guidelines for a court to impose certain consequences, such as consecutive terms of imprisonment. While we acknowledge the uncontroversial notion that recovery from drug addiction presents a serious challenge and is often punctuated by periods of relapse, that alone does not suggest, much less require, that serious consequences for possession of drugs—especially in a treatment facility—are inappropriate. Our legislature has not only criminalized possession of substances such as "spice," *see e.g.*, Utah Code Ann. § 58-37-2(1)(f) (LexisNexis Supp. 2016) (defining "controlled substance" for purposes of the Utah Controlled Substances Act), it has also authorized courts to sentence a defendant more harshly if the person is convicted of possession "while inside the exterior boundaries of property occupied by any correctional facility," such as NUCCC, *see id.* § 58-37-8(2)(e); *see also id.* § 64-13-1(3) (LexisNexis Supp. 2016) (defining "correctional facility" as "any facility operated to house offenders, either in a secure or nonsecure setting").

¶16    Our district courts are also authorized to sentence consecutively so long as they consider the requisite factors, and there is no drug addiction exception, though certainly rehabilitative need related to drug addiction is a factor that can

be taken into account like many others. *See id.* § 76-3-401(2) (LexisNexis 2012). We have consistently held that a sentencing court, while it must consider the bundle of circumstances outlined in the consecutive sentencing factors as a whole, has considerable discretion as to the weight given to each. *See e.g.*, *State v. Killpack*, 2008 UT 49, ¶¶ 58–59, 191 P.3d 17 (noting that district courts are given "wide latitude and discretion in sentencing" in recognition of the fact that "they are best situated to weigh the many intangibles of character, personality, and attitude," and that "[a]lthough courts must consider all legally relevant factors in making a sentencing decision, not all . . . factors are equally important" in every case (citations and internal quotation marks omitted)); *State v. Youngblood*, 2013 UT App 242, ¶ 4, 314 P.3d 1031 (per curiam) (affirming the imposition of consecutive sentences where the district court "found that consecutive prison sentences were merited" based "upon its review of the totality of the circumstances"). *See generally* Utah Code Ann. § 76-3-401(3) (providing the list of several factors that a court must consider in deciding whether to impose concurrent or consecutive sentences).

¶17 And here the court was not required to weigh Sexton's rehabilitative needs more heavily than the other circumstances surrounding his offenses. *See State v. Bunker*, 2015 UT App 255, ¶ 5, 361 P.3d 155 (rejecting the appellant's contention that the sentencing court had abused its discretion where the court had considered all the legally relevant factors and the appellant's "argument [came] down to a disagreement with the [sentencing] court's weighing of the relevant sentencing factors"). As discussed above, the court clearly considered Sexton's rehabilitative needs in making its decision. The court acknowledged that it understood the difficulties of addiction recovery, that it wanted Sexton to be able to "figure out some tools to . . . make better choices," and that "everybody wants to see [Sexton] be successful" in his recovery. Those concerns notwithstanding, it was not an abuse of discretion for the court

to weigh other circumstances more heavily—namely, Sexton's repeated failure to make progress toward his recovery despite being given "a lot of opportunities" with "a lot of people working with [him]" to do so and the fact that he had been caught with the drugs inside of the treatment facility where they could have been accessible not only to Sexton but to others attempting to complete recovery. *See State v. Ashcraft*, 2014 UT App 253, ¶ 5, 338 P.3d 247 ("Although courts must consider all legally relevant factors in making a sentencing decision, not all aggravating and mitigating factors are equally important, and [o]ne factor in mitigation or aggravation may weigh more than several factors on the opposite scale." (alteration in original) (citation and internal quotation marks omitted)).

¶18     Thus, contrary to Sexton's arguments on appeal, the court fully considered the gravity and circumstances surrounding Sexton's offenses, the number of victims, and his rehabilitative needs. And given the court's reasoning based on the circumstances before it, Sexton has not persuaded us "that no reasonable [person] would take the view adopted by the [sentencing] court." *See Bunker*, 2015 UT App 255, ¶ 5 (first alteration in original) (citation and internal quotation marks omitted).

¶19     Finally, to the extent Sexton challenges the court's decision to deny credit for time served in prison since the date of the offenses involved in this case, we cannot fault the court's reasoning that it was inappropriate to give Sexton credit for time he was already serving as a result of violating probation in another case. That decision was well within the court's broad discretion.

¶20     Accordingly, we affirm the district court's decision to require Sexton to serve the sentences for his misdemeanor convictions consecutively to the prison sentence he was already serving.

————————